UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DZMITRY KITSENKA, *et al.*, <br><br> Defendants. | Case No. C22-1574-RSL-MLP <br><br> ORDER |

This matter is before the Court on Plaintiffs Amazon.com, Inc., Amazon.com Services LLC (together, "Amazon"), and The Gillette Company's ("Gillette"; collectively, "Plaintiffs") *Ex Parte* Motion for Alternative Service ("Plaintiffs' Motion"). (Pls.' Mot. (dkt. # 32).) Having considered Plaintiffs' submissions, the governing law, and the balance of the record, the Court GRANTS Plaintiffs' Motion (dkt. # 32).

### I.  BACKGROUND

On November 4, 2022, Plaintiffs filed their original complaint against Dzmitry Kitsenka, Maryia Kitsenka (together, the "Kitsenka Defendants"), "individual[s] or entit[ies] doing business as" eight different Amazon Selling Accounts, and "Does 1-10," alleging they sold counterfeit Gillette products through the Amazon Selling Accounts. (Compl. (dkt. # 1).) On

ORDER - 1

1  February 10, 2023, Plaintiffs filed proof of service on the Kitsenka Defendants. (Dkt. ## 13-16.)
2  Plaintiffs later sought, and were granted, entry of default as to the Kitsenka Defendants. (Dkt.
3  ## 18-19.)

4  Utilizing expedited third-party discovery authorized by the Court (dkt. # 26), Plaintiffs
5  identified the accountholders of online bank accounts that received proceeds from the Amazon
6  Selling Accounts. (Rainwater Decl. (dkt. # 33) at ¶¶ 3, 5.) Based on this information, Plaintiffs
7  filed an amended complaint on October 2, 2023, against the Kitsenka Defendants as well as
8  Umut Can Kirman, Ibrahim Emre Durmusoglu, Maryia Lukashevich, Roman Vyrski, Hanna
9  Volkava, Maryia Muryna (collectively, the "New Defendants"), and Does 1-10. (Am. Compl.
10 (dkt. # 29).) Plaintiffs allege all Defendants acted in concert, operating seven (of the originally-
11 pleaded eight) Amazon Selling Accounts to sell counterfeit Gillette products. (*Id.* at ¶¶ 10-19.)

12 Additional third-party discovery revealed that the email addresses used to open the
13 Amazon Selling Accounts were most often accessed from Belarus and Turkey. (Rainwater Decl.
14 at ¶ 4; *see* Haskel Decl. (dkt. # 34) at ¶ 4.) The online bank accounts were also accessed
15 primarily from Belarus and Turkey. (Rainwater Decl. at ¶ 6.) The physical addresses provided
16 when opening the online bank accounts were also located in Belarus and Turkey. (*Id.* at ¶ 7.)
17 Plaintiffs' investigation revealed, however, that the addresses were missing critical information.
18 (*Id.*)

19 The Court granted Plaintiffs' motion to extend the deadline for service to October 2,
20 2023. (Dkt. # 28.) On October 2, 2023, Plaintiffs filed the instant motion. (Pls.' Mot.) Plaintiffs
21 seek permission to serve the New Defendants by the alternative method of emailing service of
22 process to the email addresses registered with the Amazon Selling Accounts. (*Id.* at 1-2.)

23

ORDER - 2

1  Plaintiffs propose to serve using "an online service, RPost (www. rpost.com), that provides proof
2  of authorship, content, delivery, and receipt." (*Id.* at 9.)

3                           **II.    DISCUSSION**

4        Federal Rule of Civil Procedure 4(f) permits service of process on individuals in foreign
5  countries by: (1) internationally agreed methods such as those authorized by the Hague
6  Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague
7  Convention"); (2) if there is no internationally agreed means, in accordance with the foreign
8  country's law; or (3) by "other means not prohibited by international agreement, as the court
9  orders." Fed. R. Civ. P. 4(f)(3). To obtain a court order under Rule 4(f)(3), a plaintiff must
10 "demonstrate that the facts and circumstances of the present case necessitated the district court's
11 intervention." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002).

12       In addition to the requirements of Rule 4(f), "a method of service of process must also
13 comport with constitutional notions of due process." *Rio*, 284 F.3d at 1016. "To meet this
14 requirement, the method of service crafted by the district court must be 'reasonably calculated,
15 under all the circumstances, to apprise interested parties of the pendency of the action and afford
16 them an opportunity to present their objections.'" *Id.* at 1016-17 (quoting *Mullane v. Cent.*
17 *Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

18       **A.    Rule 4(f)(3)**

19       Plaintiffs request Court intervention because they have been unable to identify valid
20 physical addresses for service associated with any of the New Defendants. (Pls.' Mot. at 5.) The
21 Court concludes that Plaintiffs have adequately shown that the Court's intervention is necessary.
22 Despite a thorough investigation through multiple avenues, including public records, use of a
23

private investigator, and third-party discovery, Plaintiffs have been unable to locate complete, accurate physical addresses. (Rainwater Decl. at ¶¶ 2-3, 8.)

Plaintiffs' investigation indicates that the New Defendants reside in Belarus and Turkey. (Rainwater Decl. at ¶¶ 4, 6-7.) Belarus and Turkey, like the United States, are parties to the Hague Convention. *See* Contracting Parties, *available at* https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last viewed October 24, 2023). The Hague Convention expressly "shall not apply where the address of the person to be served with the document is not known." Hague Convention, art. 1, *available at* https://www.hcch.net/en/instruments/conventions/full-text/?cid=17 (last viewed October 24, 2023). Plaintiffs here have been unable to locate physical addresses for the New Defendants, and thus, could not utilize methods authorized by the Hague Convention.

Nevertheless, whether or not the Hague Convention applies, neither Belarus nor Turkey have objected to service by email. *See* Contracting Parties, *available at* https://www.hcch.net/en/instruments/conventions/status-table/?cid=17. Courts have concluded that service by email on parties located in Belarus or Turkey is not prohibited by international law. *See, e.g.*, *Fed'n of the Swiss Watch Indus. FH v. Bestintimes.me*, 2022 WL 17987245, at *2 (S.D. Fla. Nov. 3, 2022) ("[S]ervice [on defendant located in Belarus] by e-mail or internet communication does not violate an international agreement."); *Facebook, Inc. v. Sahinturk*, 2021 WL 4295309, at *2 (N.D. Cal. Sept. 21, 2021) ("international agreement does not prohibit service by email" on a defendant in Turkey); *see also Makina v. Kimya Endustrisi A.S*, 2022 WL 3018243, at *3 (S.D.N.Y. July 29, 2022) ("Although Turkey has objected to Article 10(a) of the Hague Service Convention—which permits service via 'postal channels'—courts have held that

ORDER - 4

such Article 10(a) objections do not extend to service via email."). This Court concludes that service by email is not prohibited by international agreement.

### B. Due Process

The Court next considers whether service of process using the email addresses associated with the New Defendants' Amazon Selling Accounts comports with constitutional due process—that is, whether this method of service is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

Plaintiffs contend email service comports with due process because: (1) the email addresses "are the primary means of communication" between Amazon and the New Defendants; and (2) Plaintiffs sent "test" emails that confirmed the email addresses remain valid. (Pls.' Mot. at 8.)

Plaintiffs point to *Facebook, Inc. v. Banana Ads, LLC*, where a court authorized service via email on foreign defendants who "rely on electronic communications to operate their businesses" and for whom plaintiff had "valid email addresses[.]" 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012). In that case, however, it appears that the defendants' businesses were ongoing and used internet domain names that, when registered, "required [defendants] to provide accurate contact information and to update that information." *Id.* at *1. Plaintiffs also point to *Rio*, where the Ninth Circuit concluded that ordering service by email was within the district court's discretion where the defendant had "structured its business such that it could be contacted *only* via its email address" and "designated its email address as its preferred contact information." 284 F.3d at 1018. In that case, as in *Facebook*, the defendant's business was ongoing. *Id.* at 1012-13.

ORDER - 5

      The situation is somewhat less clear here, however, as the New Defendants' businesses operated through the Amazon Selling Accounts are no longer operating. The last known infringing sales Plaintiffs allege occurred sometime between June 2021 and August 2022 for each of the Amazon Selling Accounts. (Am. Compl., Schedule 1 (dkt. # 29) at 23-26.) After verifying the sales were counterfeit, "Amazon . . . promptly blocked Defendants' Selling Accounts." (Am. Compl. at ¶ 50.) It is unclear when Amazon blocked the Amazon Selling Accounts and whether the New Defendants were notified.

      Nevertheless, Plaintiffs provide evidence that the email addresses they propose effecting service through were actively used in operating the Amazon Selling Accounts. Individuals "registered these email addresses in order to create their Selling Accounts[.]" (Haskel Decl. at ¶ 5.) Each account was in operation and sold allegedly infringing products for a period of time in 2021 to 2022. (Am. Compl., Schedule 1.) And Plaintiffs have verified that the email addresses remain active. Plaintiffs sent "test emails" to each email address and "received no error notices, bounce back messages, or other indications that the test emails failed to deliver[.]" (Rainwater Decl. at ¶ 9.)

      In a similar situation in *Bright Solutions for Dyslexia*, alternative service by email was used where plaintiffs were "unable to locate [d]efendants and believed they may have moved to China." *Bright Sols. for Dyslexia, Inc. v. Lee*, 2017 WL 10398818, at *4 (N.D. Cal. Dec. 20, 2017), *report and recommendation adopted*, 2018 WL 4927702 (N.D. Cal. Mar. 26, 2018). The plaintiffs obtained email addresses associated with eBay online seller accounts that defendants had used to sell allegedly counterfeit products. *Id.* at *3. "No errors were received" when plaintiffs sent test emails to two of the addresses. *Id*. The court granted plaintiffs' motion for alternative service by email, and granted default judgment after defendants failed to respond

ORDER - 6

even though "the emails had been successfully delivered with no errors." *Id.* at *4. The court concluded "email service was proper because [d]efendants structured their counterfeit business such that they could only be contacted by email" and, when served by email, "[t]hese emails did not bounce back." *Id.* at *7.

In contrast, in *Amazon.com Inc. v. KexleWaterFilters*, this Court denied alternative service by email because plaintiffs had not shown sufficient "indicia that the defendants would in fact receive notice of the lawsuit if the plaintiffs served them by email." *Amazon.com, Inc. v. KexleWaterFilters*, 2023 WL 2017002, at *4 (W.D. Wash. Feb. 15, 2023). The approach in *Bright Solutions for Dyslexia* was endorsed by the Court in that case, but in *KexleWaterFilters*, the plaintiffs had "not demonstrated that the email addresses associated with [d]efendants' Selling Accounts are still valid[.]" *Id*. Plaintiffs were permitted to "renew their motion with evidence of recent communications to [d]efendants that demonstrates that service by email is a reliable method to provide [d]efendants with notice of the pendency of this action." *Id*.

Here, as in *Bright Solutions for Dyslexia*, Plaintiffs have identified email addresses that the New Defendants used in their online businesses, and verified that those email addresses remain active. As in *Bright Solutions for Dyslexia*, the New Defendants structured their allegedly counterfeit businesses such that they can only be contacted by email. Together, these circumstances provide sufficient indicia that the New Defendants are likely to receive notice if served by email. Moreover, Plaintiffs pledge to utilize a service that provides "proof of . . . delivery, and receipt" of emails. (Rainwater Decl. at ¶ 10.) Utilizing the service should provide evidence as to whether service by email was, in fact, received. This offers reassurance that if the email addresses are not being monitored and used, then service will not be erroneously deemed completed.

ORDER - 7

The Court concludes service via the email addresses is reasonably calculated to apprise the New Defendants of this action and provide them an opportunity to respond, and thus satisfies due process concerns.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion (dkt. # 32). Plaintiffs are authorized to serve:

(1) Umut Can Kirman at kirmansellerus@gmail.com;

(2) Ibrahim Emre Durmusoglu at ibrahimsellerus@gmail.com;

(3) Maryia Lukashevich at maryia.lukashevich84@gmail.com;

(4) Roman Vyrski: hnw4@mail.ru;

(5) Hanna Volkava: hanna.volkava02@gmail.com;

(6) Maryia Muryna: muryna.maria@gmail.com; mury89.gomel@gmail.com.

Plaintiffs are ORDERED to complete service and file proof of service by **November 3, 2023**.

The Clerk is directed to send copies of this Order to the parties and to the Honorable Robert S. Lasnik.

Dated this 25th day of October, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge