UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON TECHNOLOGIES INC., et al.,<br><br>Plaintiffs,<br>v.<br><br>DZMITRY KITSENKA, et al.,<br><br>Defendants. | CASE NO. 2:22-cv-01574-RSL<br><br>ORDER DIRECTING ENTRY OF JUDGMENT AND PERMANENT INJUNCTION |

This is an action for damages and injunctive relief for trademark infringement and related claims involving counterfeit Oral-B replacement toothbrush heads. This matter comes before the Court on "Plaintiffs' *Ex Parte* Motion for Default Judgment and Permanent Injunction" against defendants Dzmitry Kitsenka, Maryia Kitsenka, Umut Can Kirman, Ibrahim Emre Durmusoglu, Maryia Lukashevich, Roman Vyrski, Hanna Volkava, and Maria Muryna (collectively, "defendants"). Dkt. # 44. Defendants have not appeared, and their defaults were entered on February 24, 2023, and December 6, 2023. Dkt. # 19 and 39. Having reviewed the motion, the supporting declarations, the remaining record, and the applicable law, the Court finds as follows:

**BACKGROUND**

In recent months, the Western District of Washington has seen "numerous cases brought by Amazon.com, Inc. and Amazon.com Services, LLC, together with other intellectual property owners, against third parties allegedly facilitating the sale of counterfeit products in the

- 1

Amazon.com store." General Order 03-23, at 1 (Mar. 7, 2023). The cases are referred to collectively as the "Counterfeit Enforcement Actions." *Id.* This is one of those cases.

The motion currently pending before the Court is the latest in a series of recent motions for default judgment by Amazon Plaintiffs and/or its selling partners that have been handled by courts in this District. *See, e.g.*, *Amazon Techs., Inc. v. Qiang*, C23-1060TL, 2024 WL 1606109 (Apr. 12, 2024); *Amazon.com, Inc. v. Dong*, C23-0159TL, 2024 WL 775900 (W.D. Wash. Feb. 26, 2024); *Amazon.com, Inc. v. Wong*, No. C19-0990JLR, 2024 WL 553695 (W.D. Wash. Feb. 12, 2024); *Amazon.com, Inc. v. Dai*, No. C21-0170RSM, 2023 WL 6233835 (W.D. Wash. Sept. 26, 2023); *Amazon.com, Inc. v. Sirowl Tech.*, No. C20-1217RSL, 2022 WL 19000499 (W.D. Wash. Oct. 3, 2022); *Amazon.com, Inc. v. White*, No. C20-1773JHC, 2022 WL 1641423 (W.D. Wash. May 24, 2022); *see also Amazon.com v. Kurth*, No. C18-0353RAJ, 2019 WL 3426064 (W.D. Wash. July 30, 2019).

**A. The Allegations**

Between January 22, 2020, and April 20, 2022, defendants established seven selling accounts in the Amazon on-line store. Dkt. No. 29 ¶ 36. To become third-party sellers in the Amazon store, defendants were required to agree to the Amazon Services Business Solutions Agreement ("BSA"), which governs the seller's access to and use of Amazon's services and states Amazon's rules for selling in the Amazon store. Dkt. No. 1 ¶ 34; Dkt. No. 29 ¶ 37. By entering into the BSA, each seller represents and warrants that it "will comply with all applicable Laws in [the] performance of [its] obligations and exercise of [its] rights" under the BSA. *Id.*

Under the terms of the BSA, Amazon identifies the sale of counterfeit goods as "deceptive, fraudulent, or illegal activity" in violation of its policies, reserving the right to withhold payments and terminate the selling account of any bad actor who engages in such conduct. Dkt. No. 1 ¶ 35; Dkt. No. 29 ¶ 37. The BSA requires the seller to defend, indemnify,

and hold harmless Amazon against any claims or losses arising from the seller's "actual or alleged infringement of any Intellectual Property Rights." Dkt. No. 1 ¶ 35; Dkt. No. 29 ¶ 37.

The BSA also incorporates Amazon's Anti-Counterfeiting Policy, which expressly prohibits the sale of counterfeit goods in the Amazon store and describes Amazon's commitment to preventing the sale and distribution of counterfeit goods in the Amazon Store as well as the consequences of doing so. Dkt. No. 1 ¶¶ 36-37; Dkt. No. 29 ¶¶ 39-40.

The Gillette Company LLC, a plaintiff in this litigation and the owner of the Oral-B brand, and/or its parent company, have examined the products sold by defendants and determined that the products are counterfeit and bear a counterfeit Oral-B trademark and other indications of the brand. Dkt. No. 1 ¶ 39-52; Dkt. No. 29 ¶ 44. Plaintiffs allege that the defendants use similar tactics to evade detection and are acting in concert, using common physical addresses, shipping addresses, and/or IP addresses in connection with their Amazon selling accounts. Dkt. No. 1 ¶¶ 33 and 53; Dkt. No. 29 ¶¶ 45-47.

After plaintiffs confirmed the counterfeit sales, Amazon blocked defendants' selling accounts from further sales in the Amazon store. Dkt. No. 1 ¶ 56; Dkt. No. 29 ¶ 50.

**B. Procedural History**

Plaintiffs filed their original complaint for damages and injunctive relief on November 4, 2022. Dkt. No. 1. Defendants Dzmitry Kitsenka and Maryia Kitsenka were served later that month (Dkt. Nos. 7-8), and the Clerk of Court entered their default on February 24, 2023 (Dkt. No. 19). Plaintiffs were given leave to serve third-party discovery to identify the names and locations of the other persons or entities responsible for the selling accounts, through which they identified defendants Umut Can Kirman, Ibrahim Emre Durmusoglu, Maryia Lukashevich, Roman Vyrski, Hanna Volkava, and Maria Muryna. Dkt. No. 26. An amended complaint was filed (Dkt. No. 29), and plaintiffs completed alternative service in October 2023 (Dkt. No. 37).

ORDER DIRECTING ENTRY OF JUDGMENT AND PERMANENT INJUNCTION - 3

On December 6, 2023, the Clerk entered default against the remaining defendants. This motion for default judgment was filed on June 6, 2024, and includes a request for damages and injunctive relief. Dkt. No. 44.

## LEGAL STANDARD

A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored," because courts prefer to decide "cases on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment). When considering whether to exercise discretion to enter a default judgment, courts may consider a variety of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of a plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure.

*Id.* at 1471–72. Courts reviewing motions for default judgment must accept the allegations in the complaint as true, except facts related to the amount of damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in the pleadings, and the claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *accord Little v. Edward Wolff & Assocs. LLC*, No. C21-227, 2023 WL 6196863, at *3 (W.D. Wash. Sept. 22, 2023) (quoting *Cripps*). Damages are also limited to what was reasonably pled. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

ORDER DIRECTING ENTRY OF JUDGMENT AND PERMANENT INJUNCTION - 4

## DISCUSSION

**A.  Jurisdiction**

As an initial matter, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

### 1.  Subject Matter Jurisdiction

The Court finds that it has subject matter jurisdiction in this matter based on the assertion of federal claims for trademark counterfeiting and infringement and false designation of origin. 15 U.S.C. § 1121(a); 28 U.S.C. §§ 1331, 1338. The Court also finds that it has supplemental jurisdiction over plaintiffs' state law claim under the Washington Consumer Protection Act ("CPA") and their breach of contract claim. 28 U.S.C. §§ 1332, 1367.

### 2.  Personal Jurisdiction

Washington's long-arm statute is coextensive with the reach of federal due process. RCW 4.28.180. Therefore, to exercise personal jurisdiction over a nonresident defendant, the defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). This means a "defendant's conduct and connection with the forum State must be such that the defendant should reasonably anticipate being haled into court there." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (internal quotation marks and citation omitted).

Accepting plaintiffs' allegations as true, the Court finds that it has personal jurisdiction over defendants because they "affirmatively undertook to do business with Amazon, a corporation with its principal place of business in Washington, and sold in the Amazon [s]tore products bearing counterfeit versions of the Oral-B Trademarks . . . . [and] shipped products bearing counterfeit versions of the Oral-B Trademarks to consumers in Washington." Dkt. No. 1

¶ 15. Transacting business with a Washington state company, conducting business through its sales platform, reaching out to do business with Washington residents through that platform, and selling counterfeit products to Washington residents reasonably submits defendants to the jurisdiction of Washington courts. *Qiang*, 2024 WL 1606109, at *3-4 (Apr. 12, 2024); *Sirowl Tech.*, 2022 WL 19000499, at *1. Further, plaintiffs' claims arose from these contacts with Washington state. In addition, defendants "entered into an ongoing contractual relationship with a Washington State company . . . and then violated that contractual relationship." *Dai*, 2023 WL 6233835, at *2.[1]

**B.  Default Judgment**

Having considered the *Eitel* factors and reviewed the record in this matter, the Court finds that entry of default judgment is proper.

### 1. Prejudice to Plaintiffs

Unless default judgment is entered, plaintiffs will be prejudiced. Plaintiffs have attempted to litigate this case and vindicate their rights under federal and state law against defendants. Despite being served, defendants have failed to appear or participate in this litigation. "Without default judgment, [p]laintiffs will suffer prejudice because they will 'be denied the right to judicial resolution' of their claims and will be 'without other recourse for recovery.'" *Wong*, 2024 WL 553695, at *3 (quoting *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005)). This factor favors entry of default judgment.

### 2. Merits of Plaintiffs' Claims and Sufficiency of Complaint

Taking the allegations in of the amended complaint as true, plaintiffs have sufficiently pleaded potentially meritorious claims. *See PepsiCo, Inc. v. Calif. Sec'y Cans*, 238 F. Supp. 2d

---

[1] The Court need not reach plaintiffs' alternative argument that personal jurisdiction exists under the forum selection clause in the BSA. *See* Dkt. No. 44 at 11.

1172, 1175 (C.D. Cal. 2002) (explaining how the Ninth Circuit has suggested that these two *Eitel* factors require plaintiffs to state a claim on which they can recover). The Court reviews each claim in turn.

        **a.**      **Claim One: Trademark Counterfeiting and Trademark Infringement**

Gillette has asserted a claim for trademark counterfeiting and infringement against defendants. Dkt. No. 29 ¶ 51-57. To prevail on a claim for trademark infringement under 15 U.S.C. § 1114, plaintiffs must show that defendants used:

> (1) a reproduction, counterfeit, copy or colorable imitation of [its] registered trademark, (2) without its consent, (3) in commerce, (4) in connection with the sale, offering for sale, distribution or advertising of any goods, (5) where such use is likely to cause confusion, or to cause a mistake or to deceive.

*Wong*, 2024 WL 553695, at *4 (quoting *Kurth*, 2019 WL 3426064, at *2). "Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark." *Id.* (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005)). Courts generally evaluate eight factors to determine whether confusion is likely:

> 1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in selecting the mark; and 8) the likelihood of expansion into other markets.

*KP Permanent Make-Up*, 408 F.3d at 608 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)). "Where a defendant uses a counterfeit mark, however, courts both within and outside the Ninth Circuit presume a likelihood of consumer confusion." *Id.* (citing *Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013) (compiling cases)). A "counterfeit" is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

1  Here, plaintiffs allege that Gillette owns the Oral-B Trademarks described in the
2  Amended Complaint. Dkt. No. 29 ¶ 53. Defendants advertised, marketed, offered, and sold,
3  without authorization, counterfeit products bearing the Oral-B Trademarks. Dkt. No. 29 ¶ 55.
4  Accepting these allegations as true, the Court finds that it is likely that a reasonable consumer
5  would confuse the products sold through the defendants' Selling Account in the Amazon Store
6  with genuine Oral-B products. Therefore, plaintiffs have stated a claim against defendants for
7  trademark counterfeiting and infringement in violation of 15 U.S.C. § 1114. The second and
8  third *Eitel* factors weigh in favor of entry of default judgment on that claim.

9  **b.  Claims Two and Three: False Designation of Origin[2]**

10  Plaintiffs bring claims for false designation of origin against defendants under 15 U.S.C.
11  § 1125(a). Dkt. No. 29 ¶¶ 58–74. To state a claim for false designation of origin, plaintiffs must
12  allege that defendants "(1) used in commerce (2) any word, false designation of origin, false or
13  misleading description, or representation of fact, which (3) is likely to cause confusion or
14  mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in
15  question." *Wong*, 2024 WL 553695, at *5 (quoting *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F.
16  Supp. 3d 1156, 1170 (N.D. Cal. 2015)). "Although [Gillette] is the trademark holder in this case
17  and not [the Amazon plaintiffs], under § 1125(a), '"any person who believes that he or she is
18  likely to be damaged" by a defendant's false advertising' may sue." *Dai*, 2023 WL 6233835, at
19  *3 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)).

20  (1)  Gillette

21  Gillette allege that defendants sold counterfeit Oral-B products bearing its Oral-B
22  Trademarks through commercial advertising or promotion of their counterfeit products. Dkt. No.

---

[2] Plaintiffs are not seeking entry of default judgment on their false advertising claims and have agreed to voluntarily dismiss those claims without prejudice.

ORDER DIRECTING ENTRY OF JUDGMENT AND PERMANENT INJUNCTION - 8

29 ¶ 61. This unauthorized misuse of the Oral-B Trademarks allegedly deceived customers into believing that the products were authentic when they were actually counterfeit. *Id.* ¶¶ 62. The advertising, marketing, and selling of products bearing the counterfeit versions of the Oral-B Trademarks were used to compete unfairly with Gillette (*id.*), resulting in damages, a claim for disgorgement of profits, and the need for injunctive relief (id. ¶¶ 65-66. Gillette has stated a claim for false designation of origin. *See Wong*, 2024 553695, at *5 (holding the same); *White*, 2022 WL 1641423, at *3 (same).

          (2)    Amazon

Amazon.com and Amazon Services allege that defendants deceived them about the authenticity of the products they were advertising, marketing, offering, and selling, in violation of the BSA and Amazon Plaintiffs' Anti-Counterfeiting Policies. Dkt. No. 1 ¶¶ 68-74. Defendants' acts allegedly undermine and jeopardize consumer trust in Amazon and the Amazon Store. *Id.* ¶ 72. Amazon.com and Amazon Services have stated a claim for false designation of origin. *See Dai*, 2023 WL 6233835, at *3 (holding the same); *Sirowl Tech.*, 2022 WL 19000499, at *3 (same), *White*, 2022 WL 1641423, at *3 (same).

          c.    **Claim Four: Violation of WCPA**

Plaintiffs jointly bring a claim under the Washington Consumer Protection Act ("WCPA"). Dkt. No. 29 ¶¶ 75-79. To state a claim under the WCPA, plaintiffs must allege "(1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) affecting the public interest; (4) injuring its business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered." *Dai*, 2023 WL 6233835, at *4 (quoting *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, No. C18-1011, 2020 WL 758070, at *2 (W.D. Wash. Feb. 14, 2020)). "Absent unusual circumstances, the analysis of a CPA claim will follow that of the [federal] trademark infringement and unfair competition claims; it will

ORDER DIRECTING ENTRY OF JUDGMENT AND PERMANENT INJUNCTION - 9

turn on the likelihood of confusion regarding a protectable mark." *Id.* (quoting *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010)). Here, "[b]ecause analysis of a CPA claim tracks that for a federal trademark claim, and there do not appear to be any unusual circumstances dictating a different result, [p]laintiffs have already demonstrated the basis for their CPA claim." *Id.* The second and third *Eitel* factors weigh in favor of entry of default judgment on the WCPA claim.

            **d.**      **Claim Five: Breach of Contract**

Plaintiff Amazon Services brings a claim for breach of contract against defendants. Dkt. No. 29 ¶¶ 80-85. To state a claim for breach of contract, Amazon Services must show: "(1) the existence of a contractual duty, (2) breach, (3) causation, and (4) damages." *Kurth*, 2019 WL 3426064, at *3 (citing *Larson v. Union Investment & Loan Co.*, 168 Wash. 5, 10 P.2d 557 (1932)). Amazon Services alleges that defendants agreed to the terms of the BSA, which incorporates by reference and binds defendants to Amazon's Anti-Counterfeiting Policy. Dkt. No. 29 ¶ 81. Defendants allegedly breached these agreements by selling counterfeit products on the Amazon marketplace, submitting falsified documents to obtain permission to sell in the Amazon Store, and submitted falsified documents after their Selling Accounts were suspended in an effort to hve them reinstated. *Id.* ¶¶ 83-84. Taking these allegations as true, Amazon Services has stated a claim for breach of contract. The second and third *Eitel* factors weigh in favor of entry of default judgment on this claim.

            **3.**      **Factor Four: Sum of Money at Stake**

Given the substantial sums that are at stake and the seriousness of the alleged misconduct, this factor favors entry of default judgment. *See Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (stating that this factor accounts for "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of

ORDER DIRECTING ENTRY OF JUDGMENT AND PERMANENT INJUNCTION - 10

money are involved, and whether the recovery sought is proportional to the harm caused by defendant's conduct") (internal citations and quotation omitted). The fourth *Eitel* factor weighs in favor of entry of default judgment.

### 4. Factor Five: Possibility of Dispute of Material Facts

"When default has been entered, courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true." *Curtis*, 33 F. Supp. 3d at 1212. Not only have defendants failed to appear in this action, but Amazon Plaintiffs have provided detailed evidence in support of their claims that would be difficult to rebut. This factor favors entry of default judgment.

### 5. Factor Six: Whether Default Is Due to Excusable Neglect

There is no evidence that defendants' failure to appear is due to excusable neglect. This factor favors entry of default judgment.

### 6. Factor Seven: Strong Policy in Favor of Decision on the Merits

The Court maintains a strong policy preference in favor of resolution of claims on the merits. "Where, as here, a defendant fails to appear or defend itself in the action, however, the policy favoring decisions on the merits is not dispositive." *Dong*, 2024 WL 775900, at *7 (citing *Wong*, 2024 WL 553695, at *7).

For all of the foregoing reasons, plaintiffs' motion for default judgment is GRANTED. Amazon's claim of false advertising is hereby DISMISSED without prejudice.

### C. Gillette's Statutory Damages

"Under the Lanham Act, a plaintiff may elect whether to recover its actual damages caused by the defendants' use of a counterfeit mark or statutory damages." *Dong*, 2024 WL 775900, at *7 (citing *Wong*, 2024 WL 553695, at *7). A plaintiff may recover statutory damages

ORDER DIRECTING ENTRY OF JUDGMENT AND PERMANENT INJUNCTION - 11

of not less than $1,000 or more than $200,000 per infringed mark. 15 U.S.C. § 1117(c)(1). However, "[i]f the court finds that a defendant's use of a counterfeit mark was willful, it has discretion to award statutory damages of 'not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.'" *Id.* (quoting *Wong*, 2024 WL 553695, at *7). "[S]tatutory damages may compensate the victim, penalize the wrongdoer, deter future wrongdoing, or serve all of those purposes." *Id.* (quoting *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023)). "The plaintiff, however, 'is not entitled to a windfall.'" *Id.* (quoting *Wong*, 2024 WL 553695, at *1). Because Gillette has alleged the willful infringement and unlawful use of four Oral-B Trademarks, the Court may award up to $8,000,000 in statutory damages.

Gillette seeks statutory damages in an amount equal to three times the aggregate sales of counterfeit products each Selling Account associated with one or more defendants sold. *See* Dkt. # 44 at 23-26. Gillette's request is conservative, reasonable, and in line with other awards in this district. The Court therefore awards Gillette the following amounts in statutory damages:

- $5,589 against defendant Hanna Volkava for counterfeit sales from the Best-FBA-Store Selling Account;
- $97,233 against defendants Ibrahim Emre Durmusoglu and Dzmitry Kitsenka, jointly and severally, for counterfeit sales from the IED Store LLC Selling Account;
- $41,817 against defendant Umut Can Kirman for counterfeit sales from the KirmanLLC Selling Account;
- $50,025 against defendant Roman Vyrski for counterfeit sales from the M3 Turbo Selling Account;
- $82,683 against defendant Maria Muryna for counterfeit sales from the MarMur Selling Account;

- ▪ $10,923 against defendants Maryia Muryna and Maryia Kitsenka, jointly and severally, for counterfeit sales from the MaryBY Selling Account; and
- ▪ $31,170 against defendants Maryia Lukashevich and Maryia Kitsenka, jointly and severally, for counterfeit sales from the MegaStorBY Selling Account.

### D. Amazon's Actual Damages

"The general measure of damages for breach of contract is that the injured party is entitled to: (1) recovery of all damages that accrue naturally from the breach, and (2) to be put into as good a pecuniary position as he would have had if the contract had been performed." *Entry Select Ins. Co. v. Silver Arrow Cars, Ltd.*, C19-0598, 2020 WL 1847749 (W.D. Wash. Apr. 13, 2020) (citing *Diedrick v. School Dis. 81*, 87 Wash.2d 598, 610 (1976)).

Here, Plaintiff Amazon Services seeks an award of actual damages it suffered as a result of Defendants' breaches of the BSA, in an amount totaling $37,113. The Court finds that Amazon's request is reasonable, appropriate, and just. Defendants agreed to "defend, indemnify, and hold harmless Amazon . . . against any . . . loss [or] damage . . . arising from or related to . . . Your Products, including the . . . refund . . . thereof." Dkt. No. 44 at 27. Amazon did in fact issue refunds to all customers who had purchased counterfeit Oral-B products through the ROM Selling Account, but was unable to recover $37,113 of the amounts paid. *Id*. Thus, Amazon's damages request is consistent with the amount it is entitled to under the BSA. The Court therefore awards Amazon the following amounts in actual damages:

- ▪ $11,197 against defendant Umut Can Kirman for Amazon's damages arising from the counterfeit sales from the KirmanLLC Selling Account; and
- ▪ $25,916 against defendants Ibrahim Emre Durmusoglu and Dzimitry Kitsenka, jointly and severally, for Amazon's damages arising from the counterfeit sales from the IED Store LLC Selling Account.

ORDER DIRECTING ENTRY OF JUDGMENT AND PERMANENT INJUNCTION - 13

E.     **Permanent Injunction in Favor of All Plaintiffs**

The Lanham Act includes "the 'power to grant injunctions accordingly to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). The WCPA similarly authorizes injunctions against violations of the statute. RCW 19.86.090.

In trademark cases, courts apply "traditional equitable principles" in deciding whether to grant permanent injunctive relief. *Reno*, 452 F.3d at 1137 (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 393 (2006)). Plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 1137 n.11 (quoting *eBay*, 547 U.S. at 391). A trademark holder is entitled to a rebuttable presumption of irreparable harm upon a finding of a violation. 15 U.S.C. § 1116(a).

Plaintiffs seek a permanent injunction enjoining defendants from their infringing uses of the Oral-B Trademarks. Specifically, plaintiffs seek an order:

> permanently enjoining [d]efendants, their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them, who receive actual notice of this order, from:
>
> > a. selling counterfeit or infringing products in Amazon's stores;
> >
> > b. selling counterfeit or infringing products to Amazon or any Amazon affiliate;
> >
> > c. manufacturing, importing, distributing, offering to sell, or selling any product using the Gillette brand or

>> trademarks, or which otherwise infringes Gillette's intellectual property, in any store or in any medium; and
>
> d. assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities listed in (a) through (c) above.

Dkt. No. 44 28. Plaintiffs argue that all four *eBay* factors weigh in favor of a permanent injunction. The Court agrees.

First, plaintiffs are entitled to a rebuttable presumption of irreparable harm, as they have alleged (and the Court accepts as true) that defendants have committed trademark infringement and false designation of origin, among other claims. *See* 15 U.S.C. § 1116(a). There is no evidence to rebut this presumption.

Second, remedies at law are inadequate to compensate plaintiffs, who have alleged harm to their reputation and goodwill. "Harm resulting from lost customer goodwill 'is neither easily calculable, nor easily compensable' and thus cannot be remedied by a monetary award." *Dong*, 2024 WL 775000, at *10 (quoting *Wong*, 2024 WL 553695, at *10). Moreover, defendants' failure to appear "suggests that their infringing behavior may continue absent an injunction." *Id.* (citing *Wong*, 2024 WL 553695, at *10).

Third, the balance of hardships strongly favors plaintiffs. Without an injunction, plaintiffs may suffer further harm to their reputation through counterfeit sales. "On the other hand, because [d]efendants never had a right to infringe [Gillette'] trademarks in the first place, they will suffer no harm from an injunction prohibiting unlawful infringement in the future." *Id.* (citing *Wong*, 2024 WL 553695, at *10); *see also T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1133 (W.D. Wash. 2012) (holding defendants had "no legitimate interest in" continuing deceptive conduct).

ORDER DIRECTING ENTRY OF JUDGMENT AND PERMANENT INJUNCTION - 15

1    Finally, a permanent injunction would serve the public interest "in protecting trademark
2    holders' rights and minimizing the confusion caused by the presence of counterfeit products in
3    the marketplace." *Wong*, 2024 WL 553695, at *10 (citing *Treemo, Inc. v. Flipboard, Inc.*, 53 F.
4    Supp. 3d 1342, 1368 (W.D. Wash. 2014)).

5    Therefore, plaintiffs' request for a permanent injunction is GRANTED.

## CONCLUSION

For all of the foregoing reasons, it is hereby ORDERED that:

(1) "Plaintiffs' *Ex Parte* Motion for Default Judgment and Permanent Injunction" (Dkt. No. 44) is GRANTED. The Amazon plaintiffs' claim for false advertising is DISMISSED without prejudice.

(2) Gillette is awarded statutory damages in the amount of three times the aggregate sales of counterfeit products from each defendants' respective Amazon Selling Account(s) as follows:

- $5,589 against defendant Hanna Volkava for counterfeit sales from the Best-FBA-Store Selling Account;

- $97,233 against defendants Ibrahim Emre Durmusoglu and Dzmitry Kitsenka, jointly and severally, for counterfeit sales from the IED Store LLC Selling Account;

- $41,817 against defendant Umut Can Kirman for counterfeit sales from the KirmanLLC Selling Account;

- $50,025 against defendant Roman Vyrski for counterfeit sales from the M3 Turbo Selling Account;

- $82,683 against defendant Maria Muryna for counterfeit sales from the MarMur Selling Account;

- $10,923 against defendants Maryia Muryna and Maryia Kitsenka, jointly and severally, for counterfeit sales from the MaryBY Selling Account; and
- $31,170 against defendants Maryia Lukashevich and Maryia Kitsenka, jointly and severally, for counterfeit sales from the MegaStorBY Selling Account.

(3) The Amazon plaintiffs are awarded actual damages for defendants' breach of contract as follows:

- $11,197 against defendant Umut Can Kirman for Amazon's damages arising from the counterfeit sales from the KirmanLLC Selling Account; and
- $25,916 against defendants Ibrahim Emre Durmusoglu and Dzimitry Kitsenka, jointly and severally, for Amazon's damages arising from the counterfeit sales from the IED Store LLC Selling Account.

(4) Defendants and their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of this order, are PERMANENTLY ENJOINED AND RESTRAINED from:

a. selling counterfeit or infringing products in Amazon's stores;

b. selling counterfeit or infringing products to Amazon or any Amazon affiliate;

c. manufacturing, importing, distributing, offering to sell, or selling any product using Gillette's brand or trademarks, or which otherwise infringes Gillette's intellectual property, in any store or in any medium; and

        d.  assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities listed in (a) through (c) above.

(5) The Clerk of Court is directed to enter judgment against defendants and in favor of plaintiffs as set forth above.

(6) The Court retains jurisdiction over this case for the purpose of enforcing this Order and Injunction, and for any supplemental proceedings that may be authorized by law.

(7) Plaintiffs' counsel is directed to serve a copy of this Order and Injunction on defendants' last known email addresses registered with Amazon, which plaintiffs used to complete service.

Dated this 20th day of June, 2024.

*[signature]*
Robert S. Lasnik
United States District Judge